**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            Crim. No. 24-1404-JCH

RILEY KELLNER,

    Defendant.

### UNITED STATES' SENTENCING MEMORANDUM

The United States submits this sentencing memorandum in accordance with the parties' Rule 11(c)(1)(B) plea agreement. For the following reasons, it requests the Court impose a high-end guideline sentence, that being a term of imprisonment of 18 months. Such a sentence is appropriate under the circumstances of this case, fulfills the sentencing goals laid out in 18 U.S.C. § 3553(a), is within Defendant's advisory sentencing guidelines range, and is in the public interest.

**I.  THE PRE-SENTENCE REPORT**

The United States Probation Office ("USPO") disclosed the Pre-Sentence Report ("PSR") on July 29, 2025. Doc. 31. The USPO calculated Defendant's base offense level at 14; with an adjustment for accepting responsibility, his total offense level is 12. *Id.* at ¶¶ 20-28. Based on offense level 12 and criminal history category II, his advisory sentencing guidelines range is 12 to 18 months. *Id.* at ¶ 68. The United States does not have any objections to the PSR.

**II.  LEGAL STANDARD**

In imposing a sentence that is sufficient, but not greater than necessary, the court must consider the following factors:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3) the kinds of sentences available;
  (4) the kinds of sentence and the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
  (5) any pertinent policy statement;
  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) – (7).

Because the United States Sentencing Guidelines are advisory, *see e.g., United States v. Booker*, 543 U.S. 220 (2005), the Court may exercise its discretion to vary upward when appropriate. The Tenth Circuit has made clear that "district courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range." *See United States v. Barnes*, 890 F.3d 910, 921 (10th Cir. 2018) (internal quotation marks and citations omitted); *see also United States v. Walker*, 74 F.4th 1163 (10th Cir. 2023) (citing *Barnes*, upholding a district court's decision to vary upward to 300 months when advisory guidelines range was 84 to 105 months, and finding the sentence was not arbitrary, capricious, whimsical, or manifestly unreasonable). Utilizing its broad discretion, a district court can broadly consider a defendant's conduct for sentencing purposes, even if such conduct resulted in an acquittal or was not charged at all. *See United States v. Watts*, 519 U.S. 148 (1997); *see also* U.S.S.G. §5K2.21. It is the government that bears the burden of proving sentencing issues by a preponderance of the evidence. *See United States v. Orr*, 567 F.3d 610, 614 (10th Cir. 2009).

### III. ARGUMENT

### A. The nature and circumstances of the offense and the history and characteristics of the defendant

The nature and circumstances of this offense are very straightforward. In August 2024, Albuquerque Police Department officers were patrolling downtown when they observed multiple young men—including Defendant—in a physical fight. A search pursuant to his arrest revealed a loaded firearm. At the time of his arrest in this case, he was subject to a term of state probation for his two felony convictions of shooting at or from a motor vehicle.

Defendant's criminal history is especially concerning for someone so young. At age 20, he had two felony convictions that both involved shooting a firearm. What is more concerning is that the shooting conduct underlying his first two convictions took place only weeks apart. In January 2023, officers were dispatched to a residence based on multiple gunshots being fired. PSR at ¶ 32. Defendant and his brother were identified as suspects, and casings recovered from the scene returned as matches in the National Integrated Ballistics Information Network ("NIBIN") system. *Id.* Moreover, there were *three* NIBIN matches, indicating shots fired from that weapon on three separate dates—in July 2022, October 2022, and November 2022. *Id.* Defendant's brother[1] identified him as the shooter in the January 2023 incident during his post-arrest interview with law enforcement in March 2023. *Id.* Defendant argues in his sentencing memorandum that the United States cannot prove by a preponderance standard that he has ever been involved in other shootings. Doc. 39 at 3. This is simply not true. Defendant's own brother's admission to law enforcement post-arrest that Defendant was the shooter in the January 2023 incident—which he

---

[1] Defendant's brother, Adin Kellner, separately faces sentencing before this Court for repeatedly straw purchasing firearms for others (including Defendant) and lying on federal forms to do so. *See* Crim. No. 24-367-JCH, ECF No. 63 (sentencing hearing for Adin Kellner is set for November 18, 2025).

3

knows because he was with him when the shots were fired—carries a high indicia of reliability and certainly surpasses a preponderance standard.

The next shooting took place only one month later, in February 2023. PSR at ¶ 31. In that case, law enforcement located video footage and identified Defendant as a passenger in a vehicle that fled from law enforcement and who discharged a firearm beforehand. *Id.* Law enforcement's identification of Defendant as a shooter based on video footage also plainly surpasses a preponderance standard.

Critically, Defendant entered a guilty plea to the state offenses of *shooting* at or from a motor vehicle in both of these underlying cases. And Defendant did not challenge any of the facts underlying the PSR via formal objections. Therefore, his argument that the United States cannot prove he actually engaged in shooting incidents is simply untrue.

A firearm being found in a convicted felon's pocket during an arrest does not necessarily stand out among the sea of routine firearms cases this Court has certainly seen its fair share of. However, a firearm being found in a convicted felon's pocket who is known to shoot those firearms from vehicles, is distinguishable among routine firearms cases. The United States has a responsibility to remove known shooters from the community, which is why it pursued this very case.

Considering (1) the facts of this case, (2) Defendant's young age, (3) his two prior shooting convictions, and (4) the fact that he was on state probation when he chose to break the law by carrying yet another firearm, the Court can safely conclude that the nature and circumstances of the offense, and Defendant's history and characteristics, warrant a sentence at the high end of his advisory sentencing guidelines range.

**B. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant**

By sentencing Defendant to a term of imprisonment of 18 months, this Court has the ability to accomplish numerous sentencing goals: to ensure just punishment for unlawful firearms possession, to deter Defendant from future criminal conduct, and to protect the community from those who routinely shoot firearms with reckless disregard for who might be hurt.  Such a sentence reflects the seriousness of this conduct, promotes respect for the law, and provides just punishment under these circumstances while sending a strong message to the broader community that convicted felons cannot possess firearms under any circumstances and will be punished appropriately.  This sentence has the ability to achieve the numerous sentencing goals outlined in § 3553(a) that Defendant's multiple prior state court sentences have simply not accomplished.  There can be no doubt that the community will be safer for the duration that Defendant is in custody.

**C. The kinds of sentences available, the sentencing range established for this defendant, and the need to avoid unwarranted sentencing disparities**

The United States Probation Office assessed Defendant's advisory sentencing guidelines range (accounting for his accepting responsibility) at 12 to 18 months.  PSR at ¶ 68.  In consideration of the need to avoid unwarranted sentencing disparities, the United States provides summaries of the latest data available from the United States Sentencing Commission for Section 922 offenses[2].

---

[2] https://www.ussc.gov/research/quick-facts/section-922g-firearms

5

## IV. CONCLUSION

For the aforementioned reasons, the United States requests that the Court sentence Defendant to a term of imprisonment of 18 months. Such a sentence is appropriate under the circumstances of this case.

>Respectfully submitted,
>
>RYAN ELLISON
>Acting United States Attorney
>
>/s/
>JAYMIE L. ROYBAL
>Assistant United States Attorney
>201 3rd St. NW, Suite 900
>Albuquerque, NM 87102
>(505) 224-1413

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system which caused defense counsel, Kelly Golightley, to be served by electronic means, as reflected on the Notice of Electronic Filing as indicated therein on October 1, 2025.

/s/
Jaymie L. Roybal
Assistant United States Attorney